# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| E-WATCH INC., E-WATCH CORPORATION, §§§ | |
| *Plaintiffs*, §§ | Case No. 2:13-CV-01061-JRG-RSP |
| v. §§ | |
| APPLE, INC., §§ | |
| *Defendant*. §§ | |

## MEMORANDUM OPINION AND ORDER

Apple moves to transfer this case to the Northern District of California under 28 U.S.C. § 1404(a). Dkt. 136. Because Apple does not show that the Northern District of California would be clearly more convenient, Apple's motion is **DENIED**.

## DISCUSSION

A district court can transfer a case to another district where the case might have been brought for "the convenience of parties and witnesses" and "in the interests of justice." 28 U.S.C. § 1404(a). The parties do not dispute that this case could have been brought in the Northern District of California. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The question is whether Apple has shown the Northern District of California to be "clearly more convenient" than the Eastern District of Texas. *Volkswagen II*, 545 F.3d at 315.

The analysis turns on a number of public and private interest factors, none of which is given dispositive weight. *See Volkswagen I*, 371 F.3d at 203. The private factors include:

(1) ease of access to evidence ("sources of proof");

(2) subpoena power over potential witnesses;

(3) cost of attendance for willing witnesses; and

(4) other practical problems.

*Volkswagen II*, 545 F.3d at 315. The public factors include:

(1) administrative difficulties flowing from court congestion;

(2) local interest in having localized interests decided at home;

(3) the familiarity of the forum with the law that will govern the case; and

(4) the avoidance of unnecessary problems of conflict of laws.

*Volkswagen I*, 371 F.3d at 203. To meet the burden of showing that the Northern District of California is clearly more convenient, Apple must show that these private and public interest factors on balance weigh in favor of transfer. *See id.*

### A. Private Factors

#### 1) Access to Evidence

Although modern technology allows a party to access documents discovered during litigation from most anywhere, the "physical" location of documents remains important. *See Volkswagen II*, 545 F.3d at 316; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Relevant evidence in patent cases often comes from the accused infringer. *Genentech*, 566 at 1345. Thus, the place where the defendant's documents are kept weighs may weigh in favor of transfer to that location. *Id.*

Apple argues that the location of evidence favors transfer because most relevant evidence is located in Cupertino, California, within the Northern District of California. Dkt. 136 at 7. Little if any relevant evidence, according to Apple, is located within this district. Specifically,

Apple argues that the primary sources of proof in this case are the data, records, and documents relevant to the accused iPhones, and this evidence is located at Apple's Cupertino facility.

There are two problems with Apple's argument. First, the inquiry is not as simple as comparing the volume of evidence located within the proposed venue to the volume of evidence located within this district. The question is whether it would be *more convenient* to access evidence from the proposed venue. *See Volkswagen II*, 545 F.3d at 316. Like many parties seeking transfer under § 1404, Apple confuses convenience for the parties with contacts to the district. Although contacts are relevant to whether venue is proper under § 1391(b)(3), they are not synonymous with convenience.

Apple discounts evidence suggesting that documents related to the accused iPhones can be accessed from Apple's Austin, Texas facility because the evidence is not within this district. But that is largely irrelevant. Apple employs hardware engineers in Austin, and testimony suggests that these engineers must be able to access technical specifications and other documents relevant to the accused iPhone hardware. Dkt. 179 at 5-6. e-Watch also identifies documents relevant to damages that are located in Apple's accounts receivables department in Austin. *Id.* Thus, the Court is not comparing the distance between Cupertino and a Northern District of California courthouse, on the one hand, and the distance between Cupertino and the Marshall, Texas courthouse, on the other.

Rather, in a fictional world in which relevant documents must be printed from an Apple facility and transported to the courthouse for trial, the comparison is subtler than Apple suggests. *See Pabst Licensing v. Apple*, Case No. 6:15-CV-01095-RWS, Dkt. No. 143 at 4 (E.D. Tex. Sept. 30, 2016). Evidence could be accessed from Apple's Cupertino facility, which is about an hour drive from the three closest district courts in the Northern District of California. Evidence

could also be accessed from Apple's Austin facility, which is about a five-hour drive from the Marshall, Texas courthouse. The difference is a four-hour drive.

Second, Apple places undue significance on the location of its own evidence, diminishing the importance of evidence from e-Watch and third-parties. Section 1404(a) requires consideration of "parties and witnesses," not just the defendant. A significant portion of a plaintiff's case is usually about the development of the invention. e-Watch points to technical illustrations, schematics, engineering notebooks, correspondence, project minute meetings, and user manuals related to the asserted patents that are located at e-Watch facilities in San Antonio, Texas. Dkt. 179-1 ¶ 6. e-Watch also presents testimony suggesting that relevant documents concerning infringement are located at third-party facilities in Dallas, Lewisville, and McKinney, Texas. Dkt. 179 at 6. Some of this evidence may not be located within this district, as Apple emphasizes, but the evidence is about 1,400 miles closer to the Marshall courthouse than to a courthouse in the Northern District of California. Even if e-Watch has not conclusively established the existence or location of third-party evidence relevant to infringement, e-Watch has submitted testimony and documents suggesting that relevant evidence is likely more convenient to this district.

Accordingly, Apple has not shown the first private interest factor to favor transfer. e-Watch's evidence is closer to this district than the Northern District of California. Even assuming the bulk of relevant evidence in this case will concern infringement, *see Genentech*, 566 F.3d at 1345, some infringement evidence from third-parties is more convenient to this district than to the Northern District of California. While Apple demonstrates that evidence regarding infringement is located in Cupertino, the record suggests that this evidence could be accessed just as easily from Apple's Austin facility. On balance, the first factor is neutral.

4

### 2) *Subpoena Power Over Potential Witnesses*

A district court's subpoena power is governed by Federal Rule of Civil Procedure 45. For purposes of § 1404(a), there are three important parts to Rule 45. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-CV-00011-JRG, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (explaining 2013 amendments to Rule 45). First, a district court has subpoena power over witnesses that live or work within 100 miles of the courthouse. *See* Fed. R. Civ. P. 45(c)(1)(A). Second, a district court has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and nonparty residents can be similarly compelled as long as their attendance would not result in "substantial expense." *See* Fed. R. Civ. P. 45(c)(1)(B)(i)-(ii). Third, a district court has nationwide subpoena power to compel a nonparty witness's attendance at a deposition within 100 miles of where the witness lives or works. *See* Fed. R. Civ. P. 45(a)(2), 45(c)(1).

Apple's subpoena power argument is not credible because it largely ignores Rule 45. Apple argues that the Discovery Order entered in this case defines Apple employees as "nonparty witnesses." Dkt. 136 at 7. According to Apple, because the Northern District of California would have subpoena power over these "nonparty [Apple] witnesses," transfer is "heavily favored." *Id.* at 7-8. The Discovery Order, however, does not have anything to do with the Court's subpoena power. The Discovery Order defines party employees as nonparty witnesses for purposes of counting the number of deposition hours, and this special definition is solely "for the purposes of [the] Discovery Order." *See* Dkt. 106 at 6.

Even weaved into Rule 45, Apple's argument is without merit. While certain Apple employees are likely potential nonparty witnesses, Apple ignores two points. First, this Court's deposition subpoena power is the same as the Northern District of California's, and Apple fails

5

to explain or acknowledge any inconvenience that would result from presenting deposition testimony at trial. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-CV-00011-JRG, 2014 WL 459719, at *5 (E.D. Tex. Jan. 31, 2014). The Fifth Circuit views a videotape deposition as an acceptable substitute for live testimony because a videotape "allows jurors to gauge the witness's attitude reflected by his motions, facial expressions, demeanor and voice inflections." *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 554 (5th Cir. 2000). Second, employees of a party or witnesses that a party otherwise controls are often willing witnesses in effect because a subpoena is not necessary to bring these witnesses to trial. *See Texas Data Co. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 643 (E.D. Tex. 2011) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)).

Similarly, e-Watch does not identify a meaningful difference between this Court and the Northern District of California's subpoena power. e-Watch highlights third-party witnesses and Apple employees that live or work in Texas, including third-party witnesses that work within this district. Dkt. 179 at 8-11. But e-Watch does not explain why these witnesses' deposition testimony could not be used at a trial in the Northern District of California. *See Battle ex rel. Battle*, 228 F.3d at 554. Even affording some weight to live witness testimony from the nonparties identified by both e-Watch and Apple, the difference between this Court and the Northern District of California's subpoena is power is minimal. The second factor is therefore neutral.

### 3) *Cost of Attendance for Willing Witnesses*

Witness convenience and costs of attending trial are important considerations. *In re Genentech*, 566 F.3d 1338 at 1343. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience

6

to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05. "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* at 205.

Both parties identify witnesses that would be required to travel to Marshall or the Northern District of California, depending on where the trial is held. Apple identifies at least five witnesses that live or work within the Northern District of California that would be required to travel to Marshall if the trial occurred here. Dkt. 136 at 9; Dkt. 184 at 3-4. e-Watch identifies 29 nonparty witnesses who live or work in Texas, some within this district. Dkt. 179 at 12.

On balance, the evidence regarding potential witness costs is neutral. e-Watch could not realistically call 29 nonparty witnesses to testify during a one-week trial in Marshall, but a reasonable number of e-Watch's potential nonparty witnesses are entitled to consideration. Apple discounts these witnesses because e-Watch speculates about the topic of these witnesses' testimony. But while a district court should assess the "relevance and materiality of the information the witness may provide," it is not necessary for a party "to show that the potential witness has more than relevant and material information." *In re Genentech*, 566 F.3d at 1343. Apple similarly identifies a reasonable number of witnesses that would come to trial, but these witnesses are Apple employees and their travel expenses would likely be reimbursed by Apple. Finally, neither party submits evidence showing that a trial in the Northern District of California would last longer than the typical one-week patent trial in Marshall, or evidence showing comparative costs, and thus the Court cannot realistically assess the relative cost for out-of-town witnesses.

### *4) Other Practical Problems*

The parties dispute whether transferring this case to the Northern District of California would impair either this Court's or the proposed court's judicial economy. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010) (discussing relevance of judicial economy to the analysis). e-Watch contends that because it has filed Complaints asserting the same patents against a number of defendants, transferring this case to the Northern District of California would result in "overlapping issues being simultaneously adjudicated in different districts." Dkt. 179 at 13 (quoting *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 876 (E.D. Tex. 2013)). Apple argues that the Court should not credit e-Watch's serially-filed cases because e-Watch could not join the cases under the America Invents Act (AIA) given that the cases do not involve the same products. Dkt. 136 at 10. Thus, according to Apple, there would be no overlapping issues. *Id.*; Dkt. 184 at 4.

e-Watch's other cases within the district are nevertheless entitled to some consideration. Apple is correct that the cases could not have been joined under the AIA, but two different courts would have to adjudicate patent validity if this case was transferred. Apple suggests that the Court should not credit e-Watch's serially-filed cases, but the law does not forbid e-Watch from enforcing its patent rights by suing multiple defendants in the same district. Apple contends that crediting serially-filed cases would encourage plaintiffs to manipulate venue by filing multiple cases, but there is nothing in the record suggesting that e-Watch has attempted to manipulate venue. Accordingly, the Court gives some weight to the impairment of judicial economy that would result if this case was transferred to the Northern District of California.

### B. Public Factors

The parties dispute only the first two public interest factors— administrative difficulties and local interest. With respect to administrative difficulties, e-Watch argues that the faster time to trial in this district weighs against transfer. Dkt. 179 at 13-14. Aside from speculating that the Northern District of California would issue a new scheduling order and set a new trial date, however, e-Watch does not present evidence approximating the time it would take this case to get to trial in California. Apple submits evidence showing that the average time to trial in this district is about two months faster than the Northern District of California. Dkt. 136 at 11. On the basis of this evidence, there is no meaningful differences between this Court's time to trial and the Northern District of California's. The first public interest factor is therefore neutral.

Local interest, by contrast, weighs in favor of transfer. Apple highlights that it has been located in Cupertino since 1976 and employs nearly 17,000 people there. Dkt. 136 at 11. According to Apple, this case "calls into question the reputation of individuals who work for Apple." *See id.* Although there is no evidence to support Apple's contention, the Court affords weight to the argument and takes notice of Apple's history in Cupertino. *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

Apple's presence in Cupertino, however, weighs only slightly in favor of transfer for two reasons. First, as other district courts have recognized, it is generally a fiction that patent cases give rise to local controversy or interest, particularly without record evidence suggesting otherwise. *See TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008). Second, as this Court is well aware, patent litigation is business as usual for Apple. It is hard to imagine that this particular case would give rise to any significant local interest in the

Northern District of California. The Court nevertheless credits Apple's presence and history in Cupertino.

e-Watch has no credible argument that local interest weighs against transfer. e-Watch contends that the citizens of this district have an interest in "correcting any wrongdoing on the part of companies that do business on a national basis." Dkt. 179 at 14 (citing *Datamize v. Fidelity Brokerage Svcs.*, 2004 WL 1683171, at *11 (E.D. Tex. Apr. 22, 2004). e-Watch also submits evidence showing that Apple has 254 retail stores nationwide, including 18 stores in Texas and two within this district. *See id.* Federal Circuit precedent, however, forecloses e-Watch's argument. Citizens of a venue do not have a substantial interest in having a patent case adjudicated locally simply because some allegedly infringing products found their way into the local market. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (citing *Volkswagen II*, 545 F.3d at 317-18); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008).

## CONCLUSION

Apple has not shown the Northern District of California to be clearly more convenient than this district. All but two of the eight relevant factors are neutral, and the remaining two—administrative difficulties and local interest—weigh only slightly against and slightly for transfer, respectively. Accordingly, e-Watch's choice of forum should be respected. *See Volkswagen II*, 545 F.3d at 315. Apple's motion to transfer (Dkt. 136) is **DENIED**.

**SIGNED this 18th day of December, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE